**NUCOR STEEL and Cities of Arlington, et. al./Office of Public Utility Council; and Public Utility Commission of Texas, Appellants,**

**v.**

**PUBLIC UTILITY COMMISSION OF TEXAS and TXU Electric Company/ TXU Electric Company, Appellees.**

No. 03–99–00698–CV.

Court of Appeals of Texas, Austin.

Aug. 31, 2000.

Rehearing Overruled Oct. 5, 2000.

Mark C. Davis, Brickfield, Burchette & Ritts, P.C., Austin, for Nucor.

Douglas Fraser, Elizabeth R. B. Sterling, Asst. Attys. Gen., Natural Resources Division, Austin, for P.U.C.

Steven A. Porter, Lloyd, Gosselink, Blevins, Rochelle, Baldwin & Townsend, P.C., Austin, for Cities.

David C. Duggins, Clark, Thomas & Winters, Austin, Howard V. Fisher, Dallas, for TXU.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

MARILYN ABOUSSIE, Chief Justice.

This is an appeal from a fuel reconciliation proceeding under the Public Utility Regulatory Act ("PURA").[1] *See* Tex. Util. Code Ann. § 36.203 (West 1998) (hereinafter "PURA § __"). The district court affirmed in part and reversed and remanded in part an order of the Public Utility Commission of Texas ("the Commission"). We will reverse in part and render judgment in accordance with the Commission's order.

### STATUTORY OVERVIEW

Under PURA, a regulated electric utility such as appellee TXU Electric Company ("TXU")[2] may not automatically pass its

---

1. Tex. Util.Code Ann. § 11.001–64.158 (West 1998 & Supp.2000).

2. At the time it applied for reconciliation, TXU was known as Texas Utilities Electric Company.

actual fuel costs through to its customers. *See* PURA § 36.201 (West Supp.2000). Instead, the Commission designs a rate for the utility that takes into account projected fuel costs in the form of a fixed "fuel factor"; the Commission periodically adjusts this factor and reconciles fuel costs the utility charged using the factor against fuel costs the utility actually incurred. *See id.* § 36.203 (West 1998).

Section 36.203, entitled "Fuel Cost Recovery; Adjustment of Fuel Factor," provides, "The commission by rule shall provide for the reconciliation of a utility's fuel costs on a timely basis." *Id.* § 36.203(e). According to an undisputed conclusion of law, this case was governed by the pre–1993 version of rule 23.23(b)(2)(H). That rule placed on the utility the burden of proving that: (1) it generated efficiently; (2) it maintained effective cost controls; and (3) it negotiated the lowest reasonable fuel cost for its non-affiliated contracts. *See* 17 Tex. Reg. 7067 (1992), *amended*, 18 Tex. Reg. 836 (1993). For fuels acquired from affiliated entities, the utility also carried the burden of establishing that (1) the affiliate's fuel-related expenses were reasonable and necessary and (2) the affiliate charged the utility no more than it charged others for items of the same class. *See id.* The rule disallowed recovery of profit or return on equity to the affiliate; authorized the Commission to investigate the affiliate's operations; required the affiliate to maintain specific financial records, which would be available to the Commission; and disallowed reconciliation of an affiliate's increased fuel cost when the events and conditions that caused the in-

creased costs were within the utility's control. *See id.*

## PROCEDURAL BACKGROUND[3]

In December 1995, TXU sought to reconcile its total fuel and purchased power costs for the period between July 1, 1992 and June 30, 1995.[4] Appellants Nucor Steel ("Nucor"), the Office of Public Utility Counsel ("OPUC"),[5] and the Cities of Arlington, *et al.*[6] were among the entities that intervened in the proceeding. Only two issues from the reconciliation proceeding are implicated in this appeal: (1) whether TXU should have been allowed to recover fuel expenses incurred under pre–1983 long-term gas contracts entered into by its affiliate Texas Utilities Fuel Company (TUFCO) and (2) whether TXU should have been allowed to recover the cost of fuel used to replace lost capacity resulting from a chimney collapse and nineteen-month outage of TXU's Monticello Steam Electric Station unit three ("MOSES Three").

An administrative law judge ("ALJ") at the State Office of Administrative Hearings conducted a contested case hearing and issued a proposal for decision ("PFD") that recommended allowing TXU to recover the costs of the replacement fuel for MOSES Three. The ALJ also recommended disallowing specific, imprudently incurred fuel costs; allowing TXU to recover for other gas purchased from TUFCO; and concluding that *res judicata* barred attacks on TUFCO's pre–1983 long-term gas contracts for alleged conflicts with federal law.

---

3. Because review of these issues requires evaluation of whether the record contains substantial evidence to support the Commission's findings, we will reserve our description of the factual background pertaining to each issue to its respective portion of the discussion.

4. TXU also sought a special exception to recover otherwise unrecoverable costs. The special exception is not at issue in this appeal.

5. The Office of Public Utility Counsel is an independent entity charged with representing the interests of residential and small commercial consumers. *See* PURA § 13.001 (West 1998).

6. The intervening and appealing cities are Arlington, Belton, Burkburnett, Cleburne, Grand Prairie, McKinney, Pantego, Plano, Richardson, Rockwall, Sulphur Springs, and Venus. We will refer to them collectively as "the Cities."

With respect to the long-term gas contracts, the Commission agreed with the ALJ and concluded that *res judicata* barred consideration of whether the contracts conflicted with federal law.[7] The Commission adopted findings and conclusions disallowing the imprudently incurred costs and allowing recovery of the remaining amounts paid to TUFCO. But the Commission disagreed with the ALJ regarding the MOSES Three replacement fuel, finding instead that "[t]he $66,982,000 in replacement power costs associated with the MOSES Unit No. 3 chimney collapse is not reasonable and should be disallowed."

TXU, the Cities, and Nucor each filed suit for judicial review of the Commission's order. *See* PURA § 15.001 (West 1998); Tex. Gov't Code Ann. § 2001.174 (West 2000). The district court denied all of the Cities' and Nucor's challenges and affirmed the portion of the order awarding the costs incurred under the long-term gas contracts. The district court overruled one of TXU's points of error but sustained the rest and reversed the Commission's order in part, remanding the cause to the Commission for entry of an order allowing TXU to recover the additional fuel costs resulting from the chimney collapse. The Commission, the OPUC,[8] the Cities, and Nucor then filed appeals with this Court.

## DISCUSSION

### *Pre–1983 Gas Contracts*

■ The Commission found that TXU purchased gas through TUFCO and that TUFCO's pre–1983 long-term well-head production contracts without market-out provisions[9] were a factor causing TXU's gas costs during the reconciliation period to exceed the average gas costs of other investor-owned utilities in Texas. In their

first issues, Nucor and the Cities argue that the Commission erred in allowing TXU to recover costs incurred under these long-term contracts.

### *Res Judicata*

In its order, the Commission concluded that "[a]ll issues regarding the prudent negotiation of the contracts executed during a prior reconciliation period should have been litigated in the fuel proceeding covering that reconciliation period." Nucor and the Cities contend that the Commission erred in applying the doctrine of *res judicata* in this situation because fuel reconciliations are separate proceedings limited to finite periods of time and the result in one proceeding cannot be *res judicata* as to another. They further contend that this argument was not ripe before 1990 and could not have been raised in a previous reconciliation. We disagree.

The Cities' and Nucor's argument to the Commission is stated in Nucor's brief:

During the period November 1978 through August 1981, federal law, the Power Plant and Industrial Fuel Use Act of 1978(FUA), [Act of November 9, 1978, Pub.L. No. 95–620, 92 Stat. 3289 (since amended),] prohibited the use of natural gas as a primary fuel in existing electric utility plants *on or after January 1, 1990.* [*See id.,* § 301, 92 Stat. 3289, 3305 (repealed 1981).] In spite of that prohibition, during that same period, TUFCO entered into more than 70 long-term contracts without market-outs with terms *extending beyond January 1, 1990.* Indeed, even before the FUA became law, during the period in which it was under serious consideration by Congress (April 20, 1977 through November

7. Although the Commission disagreed with a portion of the ALJ's rationale regarding *res judicata* and did not adopt all of the ALJ's findings, those differences are not material to this appeal.

8. The OPUC filed a statement of position in lieu of a brief, supporting the position and

arguments of the brief the Commission filed as appellant.

9. Market-out provisions allow a fuel purchaser to seek a lower price or get out of a contract in response to differences between the market price and the contract price.

1978), TUFCO entered into 26 long-term contracts without market-outs with terms extending beyond January 1, 1990. Overall, these decisions resulted in around $208 million of excessive costs that a prudent utility would not have incurred under the circumstances and that Texas consumers should not be required to bear.

(Footnotes omitted.)

These same gas contracts were the subject of Docket 9300, in which TXU also sought to recover expenses incurred thereunder and in which Nucor and the Cities [10] intervened. The question of whether TXU was reasonable in entering these contracts was at issue in that Docket. *See Texas Utils. Elec. Co. v. Public Util. Comm'n,* 881 S.W.2d 387, 413 (Tex.App.—Austin 1994), *aff'd in part and rev'd in part,* 935 S.W.2d 109 (Tex.1996). Indeed, TXU raised the Fuel Use Act to explain in part its decision to enter these contracts. *See Application of Texas Utils. Elec. Co. for Auth. to Change Rates,* Docket No. 9300, 17 P.U.C. Bull.2057, 2576 (1991).

■ The quoted argument addresses the issue of whether TXU and TUFCO were imprudent when they *entered into* twenty-year contracts for gas, expecting that for the last ten years of the contracts the gas would not have been usable as a boiler fuel. Therefore, this argument should have been raised in Docket 9300 when TXU first sought to recover expenses incurred under these contracts.[11] *Res judicata* prohibits relitigating historical investment facts such as the prudence of entering a long-term contract. *See Coalition of Cities for Affordable Util. Rates v. Public Util. Comm'n,* 798 S.W.2d 560, 565 (Tex.1990).[12] We overrule appellants' first issues to the extent they contend that *res judicata* did not bar consideration of their Fuel Use Act argument.

*Prudence Standard*

■ Nucor also contends that the Commission erred in applying only a "prudence" standard because the legislature has mandated that the Commission "disallow those fuel costs that are 'unreasonable, unnecessary or not in the public interest[.]' Tex. Util.Code § 36.062(4)."

Section 36.062 does not by its terms apply to fuel costs.[13] Instead, fuel factors and reconciliation thereof are controlled by section 36.203, which does not contain the

---

**10.** Sulphur Springs was the only one of the Cities that did not intervene in Docket 9300.

**11.** We disagree with Nucor and the Cities' contention that this argument could not have been raised until TXU actually purchased gas after January 1, 1990. As noted, if the argument were correct, the contracts were imprudent from their formation and *any* expense incurred thereunder could have been challenged on that basis.

**12.** The Cities and Nucor do not contend that TXU was imprudent in purchasing gas under these contracts because the Fuel Use Act currently prohibits them from using the gas. Indeed, they cannot make such an argument because the "off gas" portion of the Act was repealed over ten years before this reconciliation period began. *See* Act of August 13, 1981, Pub.L. No. 97–35, § 1021, 95 Stat. 614.

**13.** Section 36.062, entitled "Consideration of Certain Expenses," lists certain expenses that the Commission may not consider for rate-making purposes. *See* PURA § 36.062 (West 1998). The listed expenses include lobbying expenses, most payments made arising from accidents and equipment failures occurring at facilities owned by an entity that does not sell power in this state, and the costs of processing certain refunds or credits. *See id.* The final subsection provides that the Commission also cannot consider "any other expenditure, including an executive salary, advertising expense, legal expense, or civil penalty or fine, the regulatory authority finds to be unreasonable, unnecessary, or not in the public interest." *Id.* Fuel costs are not of the same kind or class as the listed expenses. We therefore disagree with Nucor's assertion that the legislature intended section 36.062 to apply to fuel costs. *See County of Harris v. Eaton,* 573 S.W.2d 177, 179 (Tex.1978); *Johnson v. Texas Dep't of Transp.,* 905 S.W.2d 394, 399 (Tex. App.—Austin 1995, no writ) (under rule of *ejusdem generis,* courts interpret statute containing illustrative list to include only items of same kind or class as those expressly mentioned).

language Nucor quotes and simply charges the Commission with adopting a rule to govern reconciliation proceedings. *See* PURA § 36.203(e). For affiliate purchases, the applicable rule required TXU to prove that "all fuel-related affiliate expenses [were] reasonable and necessary." 17 Tex. Reg. 7067 (1992), *amended,* 18 Tex. Reg. 836 (1993). Nucor claims that an affiliate expense may be prudently incurred but still not be "reasonable and necessary." Thus, Nucor challenges the Commission's interpretation of this rule.

◼ We defer to an agency's interpretation of its own regulations unless the agency's interpretation "is plainly erroneous or inconsistent with the regulation." *Public Util. Comm'n v. Gulf States Utils.,* 809 S.W.2d 201, 207 (Tex.1991) (quoting *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977)). If the agency interpretation fails to comport with the clear, unambiguous language of its own regulation, we must reverse its action as arbitrary and capricious. *See Sam Houston Elec. Coop., Inc. v. Public Util. Comm'n,* 733 S.W.2d 905, 913 (Tex. App.—Austin 1987, writ denied).

◼ Based on agency precedent, the Commission defined prudence in conclusion of law eleven as "the exercise of that judgment and the choosing of one of that select range of options which a *reasonable* utility manager would exercise or choose in the same or similar circumstances given the information or *alternatives available* at the point in time such judgment is exercised or option is chosen." (Emphasis added.) Nucor did not challenge this definition. The "prudence" standard explicitly incorporates a utility's reasonableness and, by speaking in terms of available alternatives, implicitly recognizes that an expense must be necessary. Because the Commission's interpretation comports with the clear, unambiguous language of the regulation, we will defer to the Commission's interpretation of "reasonable and necessary" as being that which is prudent. We overrule Nucor's first issue to the extent it

contests application of the prudence standard.

*Prudence of maintaining relationship with TUFCO*

◼ Nucor also contends that the Commission erred in finding that TXU "was prudent in maintaining its affiliate relationship with TUFCO." Specifically, Nucor argues that the Commission ignored the issue of whether TXU prudently managed its relationship with TUFCO. Nucor also argues that TXU did nothing to control the prices it paid TUFCO and that TXU could have escaped liability under the long-term contracts by terminating its relationship with TUFCO because TXU is not bound by TUFCO's contracts.

◼ In essence, Nucor argues that the Commission's finding is not supported by substantial evidence. In a substantial evidence review, we first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *See Texas State Bd. of Dental Exam'rs v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988). The test is not whether the agency made the correct conclusion but whether some reasonable basis exists in the record to support the agency's action. *See Texas Health Facilities v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 452 (Tex.1984). We may not substitute our judgment for that of the agency and may consider only the record on which the agency based its decision. *See Sizemore,* 759 S.W.2d at 116. Furthermore, we are prohibited from substituting our judgment as to the weight of the evidence on questions committed to agency discretion. *See Charter Medical–Dallas, Inc.,* 665 S.W.2d at 452.

Nucor's contentions that the Commission ignored the issue of whether TXU prudently managed its relationship with TUFCO and that TXU failed to take any steps to control gas costs are unfounded. The Commission found that the relation-

ship between these parties is defined by the Fuel Trust Agreement and the Gas Supply Agreement, both of which were in evidence. In addition, the Commission found that TXU has a right to oversee TUFCO and that TUFCO's officers are responsible to TXU executives. The Commission also found that TUFCO has formal action plans to monitor and control costs and that it conducts monthly reviews to identify and remedy cost variances. Finally, the Commission found that TU Services' internal audit department monitors TUFCO to ensure that effective controls are in place and that TXU policies are followed as well as to ensure that contract terms are met. The record contains evidence supporting all of these findings.

In addition, the record contains substantial evidence that TXU is indeed bound by TUFCO's contracts with third party suppliers. The Fuel Trust Agreement states that TUFCO is a wholly owned subsidiary of TXU and was specifically created to supply TXU with fuel. The agreement further provides that TUFCO acquires fuel "for the use of [TXU]" and that all of TUFCO's fuel acquisitions are "solely for the benefit of [TXU]." The agreement explicitly provides that "*all rights, titles, and interests* held by [TUFCO] in the properties and contracts identified . . . (as well as any other fuel properties and contractual rights . . . hereafter acquired by [TUFCO]), are *dedicated to,* and *held for the benefit of,* and *in trust for,* [TXU]." (Emphasis added.) This agreement gives TUFCO actual authority to acquire fuel for TXU and supports the Commission's finding that TXU could not escape liability by simply terminating its relationship with TUFCO. *See, e.g., Spring Garden 79U, Inc. v. Stewart Title Co.,* 874 S.W.2d 945, 948 (Tex.App.—Houston [1st Dist.] 1994, no writ); *Currey v. Lone Star Steel Co.,* 676 S.W.2d 205, 209 (Tex.App.—Fort Worth 1984, no writ) (principal liable for acts of agent for which agent has actual authority).

Although Nucor adduced evidence indicating that TXU could have been more efficient or taken additional steps, that evidence does not alter the conclusion that substantial evidence supports the Commission's finding. *See Star Houston, Inc. v. Texas Dept. of Transp.,* 957 S.W.2d 102, 109 (Tex.App.—Austin 1997, pet. denied) (agency alone has power to weigh evidence and assess credibility of witnesses); *Sizemore,* 759 S.W.2d at 117 (court may not supplant agency's assessment of evidence unless reasonable minds could not have reached agency's conclusion).

*Whether TXU/TUFCO prudently managed contracts during reconciliation period*

▮▮ Finally, Nucor contends that TXU failed to establish that its overall management of the long-term gas contracts was prudent because TXU adduced no evidence of an overall plan and because TXU's management was not reasonable under the circumstances.

The prudence or reasonable and necessary standard does not mandate that TXU and TUFCO undertake any specific course of action, nor does the test specifically require that a utility adduce evidence of a long-term plan as Nucor suggests. What is prudent, reasonable, and necessary depends on circumstances. The prudence standard does not require perfection. The Commission allowed TXU to recover certain costs but disallowed other costs when the evidence did not establish TXU's prudence. The fact that TXU adduced evidence that it complied with the terms of its contracts is some evidence that TXU was reasonable. We overrule the last of Nucor's arguments under its first issue. Nucor and the Cities' first issues challenging TXU's recovery of costs incurred under the long-term gas contracts are overruled.

*MOSES Three*

The other issue in this appeal concerns whether the Commission erred in disallowing fuel costs that TXU incurred because of a nineteen-month outage of MOSES Three.

TXU burns lignite in the MOSES Three boilers to produce steam-generated electricity. Part of the exhaust gas created in the generation process is drawn into a flue gas desulfurization system or scrubber where it is sprayed with limestone slurry to remove sulfur dioxide. Mist eliminators catch the slurry mist and drop it to the bottom of the scrubber tower. However, some slurry remains in the flue gas and leaves the scrubber. When it dries, this carryover slurry is called "sludge." At MOSES Three, the scrubbed gas passes through a horizontal bridge or breach duct and enters a chimney where it is vented into the atmosphere.

Over time, sludge built up along the breach duct and on the chimney wall opposite and slightly above the breach duct's opening. The sludge build-up on the chimney wall formed a large, belly-shaped "cyst" that was approximately fifty feet tall and extended two thirds of the way around the chimney. This cyst was ten to twelve feet deep at its thickest point but thinned out toward the edges. The mass was located between 100 and 150 feet above ground level. TXU undertook efforts to remove the build-up, and by November 13, the sludge was only three to six feet thick. On the evening of November 13, a large portion of the sludge mass broke loose and fell to the ground. The next day, after crews had been working for approximately half an hour, another portion of the mass fell away. Shortly thereafter, the remaining mass came loose from the wall and fell to the ground, compressing the air in the base of the chimney and thrusting the inner brick liner of the chimney outward; the liner in turn ruptured the chimney's outer concrete shell. As the outer layer of the chimney collapsed, it toppled to the side and fell on other parts of the plant causing damage and killing a member of the cleaning crew. The unit was off-line for nineteen months following the collapse. In order to offset lost generating capacity during this period, TXU spent $66,982,000 to purchase additional natural gas for use in other facilities.

TXU sought to recover these replacement costs in the reconciliation.

The ALJ applied a proximate cause standard and evaluated whether TXU's actions were the cause in fact of the collapse and whether the collapse was a foreseeable result of TXU's actions. The ALJ noted the sludge mass "was a cause in fact of the collapse of the MOSES Unit 3 chimney" and that "[i]n retrospect, it is clear that the mass that existed the night before the chimney collapsed was affected by the prior cleaning in such a manner that it detached and fell from the liner." Nonetheless, the ALJ concluded that the effect of cleaning efforts on the sludge mass "was not an obvious condition which made the continued cleaning operations imprudent." The ALJ recommended finding that "[t]he accident could not have been anticipated," that TXU's contractor was prudent in selecting methods to clean the chimney, and that "an engineer evaluating the potential damage from the entire mass falling to the bottom of the chimney would ... not [have anticipated] that there would be major structural damage to the chimney."

The Commission disagreed with the ALJ's use of the proximate cause standard. Instead, the Commission held that agency precedent required a determination of (1) whether TXU was prudent in its actions and decisions and (2) whether such imprudence, if any, resulted in the collapse of the MOSES Three chimney. The Commission found that TXU was imprudent and that the utility's imprudence led to the collapse of the chimney. In the alternative, the Commission found that even if the collapse did not result from TXU's imprudence, TXU should not be allowed to recover the replacement fuel costs because the rates paid by TXU's customers during the outage included a return on the utility's investment in MOSES Three. The Commission reasoned that TXU customers should not be required to pay for MOSES Three during the time it was not generating *and* be required to pay for replace-

ment fuel costs. The Commission decided that either TXU's imprudence or a balancing of the equities required that TXU's shareholders, rather than its customers, absorb the replacement fuel costs; it therefore disallowed recovery of the approximately $67 million expense.

TXU appealed to the district court on the issues of (1) whether foreseeability was the appropriate causation standard to be applied to a utility's alleged imprudence; (2) whether substantial evidence supported the Commission's decision that TXU's imprudence led to the collapse; and (3) whether the Commission could balance the equities in determining whether to allow TXU to recover fuel costs.[14] The district court reversed the portion of the Commission's order disallowing the replacement fuel costs associated with the collapse. The Commission now appeals contending that: (1) under a balancing of the equities approach, TXU's shareholders rather than its customers should be required to bear the excess fuel costs incurred; and (2) substantial evidence supports the Commission's finding that TXU's imprudence led to the MOSES Three collapse.

*Prudence*

In its second issue, the Commission argues that proximate cause is not the proper standard to apply in determining whether TXU's actions led to the MOSES Three collapse. In rejecting the ALJ's proposed findings, the Commission rejected application of the principle of proximate cause— *i.e.*, cause in fact and foreseeability. The Commission contends that this was a policy choice and that we should review it for an abuse of discretion. *See West Tex. Utils. Co. v. Office of Pub. Util. Counsel,*

896 S.W.2d 261, 272 (Tex.App.—Austin 1995, no writ). TXU responds that the Commission's own prudence standard contains an element of foreseeability. TXU's argument is thus a challenge to the Commission's interpretation of its own rules, to which we defer unless that interpretation is clearly erroneous or inconsistent with the regulation. *See Gulf States Utils.,* 809 S.W.2d at 207; *Sam Houston Elec. Coop.,* 733 S.W.2d at 913.

 Under either standard of review, we hold that the Commission properly rejected the proximate cause determination. From a policy standpoint, a fuel reconciliation proceeding differs greatly from a tort action, and nothing suggests the same law should govern both proceedings. In a tort action, the plaintiff has the burden of establishing that the defendant had a duty to the plaintiff, that the defendant failed in its duty by failing to act reasonably under the circumstances, and that the defendant's failure did in fact cause harm to the plaintiff of a foreseeable nature. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Sisters of Charity of Incarnate Word, Houston, Tex. v. Gobert,* 992 S.W.2d 25, 28 (Tex.App.—Houston [1st Dist.] 1997, no pet.). The theory is grounded on the principle that a person should only be held responsible for causing harm of a type that a person of ordinary intelligence should anticipate. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992); *Sisters of Charity,* 992 S.W.2d at 30. In a fuel reconciliation proceeding, on the other hand, the utility is seeking to *avoid* responsibility for fuel costs and pass them on to consumers, a matter on which the utility carries the burden. Unlike the plaintiff in

14. Nothing in the record clearly delineates the bases for the district court's decision. The judgment states that the court sustained TXU's first three points of error and overruled its fourth. But TXU's pleading does not contain enumerated points. TXU's motion for rehearing at the Commission—attached to and referred to by its pleading—does contain enumerated points, but it contains sixteen of them. The reporter's record indicates that

the reporter was dismissed after the administrative record was filed with the district court but before argument commenced. Because no party claims that another failed to preserve an argument by presenting it in the district court and because we review the agency's order rather than the district court's decision, these omissions do not affect our review.

a tort case, a utility seeking reconciliation need not prove that another acted unreasonably but must instead establish that the *utility itself* acted reasonably. We uphold the Commission's rejection of the tort law principle on the grounds that tort law and fuel reconciliations have different histories and purposes.

■ We will now examine the prudence standard articulated in the Commission's order to determine if that standard necessarily implies an element of foreseeability. We reiterate the three conclusions of law TXU quotes in its brief:

11. Prudence is the exercise of that judgment and the choosing of one of that select range of options which a reasonable utility manager would exercise or choose in the same or similar circumstances given the information or alternatives available at the point in time such judgment is exercised or option is chosen. [Citations omitted.]

12. There may be more than one prudent option within the range available to a utility in any given context. Any choice within the select range of reasonable options is prudent, and the Commission should not substitute its judgment for that of the utility. The reasonableness of an action or decision must be judged in light of the circumstances, information, and available options existing at the time, without benefit of hindsight. [Citations omitted.]

13. The reasonableness of the decision must be determined from an analysis of options available at the time the decision was made. [Citations omitted.]

The quoted conclusions require an assessment of the utility's actions and decisions under the circumstances to determine whether the utility acted prudently. These conclusions do not state, however, that in the event the Commission finds the utility failed to establish prudence, the Commission must nonetheless allow the utility to recover its costs unless the Commission further finds that the costs were a foreseeable result of the imprudence. Neither does rule 23.23(b)(2)(H) contain an element of foreseeability. On the whole, TXU's argument neglects to take into account who bears the burden in a fuel reconciliation. Neither the rule nor the Commission's interpretation provides that a utility shall recover fuel costs unless the Commission proves that the costs were imprudently incurred. Instead, it is the utility that must prove that it was acting prudently. *See* 17 Tex. Reg. 7067 (1992), *amended,* 18 Tex. Reg. 836 (1993). If the utility fails to carry its burden, it cannot recover its costs. It was TXU's burden to establish that its actions were prudent. We hold that the Commission did not abuse its discretion by refusing to assume a burden not given it by rule or Commission precedent. *See Pedernales Elec. Coop., Inc. v. Public Util. Comm'n,* 809 S.W.2d 332, 337 (Tex.App.—Austin 1991, no writ) (Commission's failure to find in utility's favor despite evidence supporting utility's position merely meant utility failed to carry burden of proof and was not arbitrary and capricious). We must now examine the record to see if substantial evidence supports the Commission's finding that TXU failed to meet the burden of establishing that its actions were prudent.

*Substantial Evidence*

■ The Commission made the following undisputed findings: The sludge mass in the MOSES Three chimney on October 31, 1993 was of unprecedented size; TXU did not consult a structural engineer to evaluate "the effect that the existence or falling of the unprecedented sludge mass could have on the structural integrity of the chimney"; TXU did not perform a risk assessment or analyze alternatives to standard cleaning procedures; and TXU assigned the clean-up project to an inexperienced supervisor who had never before managed or witnessed a chimney cleaning operation. All of these findings are sup-

ported by the record and support the Commission's basic premise that TXU was not prudent to proceed with "business as usual" in the face of such extraordinary circumstances.

TXU responds that the sludge had been reduced to less-than-unprecedented levels by the time of the collapse. The utility points to witness testimony indicating that it was not standard practice to perform a risk assessment and that any such assessment probably would have failed to predict the unexpected rotation of the sludge mass during its fall or the resulting piston effect. While the testimony constitutes some evidence that TXU acted prudently, it does not alter our conclusion that the record contains substantial evidence from which the Commission could fail to find that TXU established that it was prudent. *See Charter Medical–Dallas, Inc.,* 665 S.W.2d at 452 (courts may not substitute their judgment as to weight of evidence of questions committed to agency discretion); *Pedernales Elec. Coop.,* 809 S.W.2d at 337 (Commission's failure to find in utility's favor supported by substantial evidence despite presence of evidence supporting utility's position); *see also Lewis v. Metropolitan Sav. & Loan Ass'n,* 550 S.W.2d 11, 13 (Tex.1977); *Texas Dep't of Pub. Safety v. Latimer,* 939 S.W.2d 240, 244 (Tex. App.—Austin 1997, no writ) (evidence in record may preponderate against agency's decision and nevertheless amount to substantial evidence). We sustain the Commission's second issue.

*Balancing of the Equities*

In its first issue, the Commission contends that under a "reasonable and necessary" standard, the Commission may disallow fuel costs if it determines after balancing the equities that it would be more fair to require a utility's shareholders to bear the cost rather than consumers. The Commission's order relied on this argument as an alternative reason for disallowing recovery of the replacement fuel costs. Because we have determined that the Commission was justified in disallowing these costs based on its finding that TXU failed to establish it acted prudently, we need not address this issue. *See* Tex.R.App. P. 47.1.

## CONCLUSION

We reverse that portion of the district court judgment that reversed the Commission's order disallowing recovery of replacement fuel costs associated with the MOSES Three collapse and render judgment affirming the Commission's order. We affirm the remainder of the district court's judgment.