# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00628-CV

**Entergy Gulf States, Inc., Appellant**

**v.**

**Public Utility Commission of Texas; Office of Public Utility Counsel; Cities of Beaumont, Bridge City, Conroe, Groves, Nederland and Port Neches; and Texas Industrial Energy Consumers, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. GN203604, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING**

## O P I N I O N

This appeal originated as a suit for judicial review challenging the Public Utility Commission's (Commission) order from a fuel reconciliation proceeding conducted under the Public Utility Regulatory Act (PURA). *See* Tex. Util. Code Ann. § 36.203 (West 1998). Appellant Entergy Gulf States, Inc. (Entergy)[1] claims that the Commission erred when it refused to permit Entergy to

---

[1] Entergy is one of five public utilities that comprise the Entergy System, a single integrated electric system that operates under the Entergy System Agreement (System Agreement). The System Agreement is a separate Federal Energy Regulatory Commission tariff that controls how electricity and the total costs of generating power on the system are allocated among the corporate siblings. *Entergy Louisiana, Inc. v. Louisiana Pub. Serv. Comm'n*, 539 U.S. 39, 37-38 (2003). A sale under the System Agreement can occur only when a subsidiary has energy in excess of its own needs. In any given hour, a subsidiary can be buying from or selling to the Entergy Energy Exchange, a pool of surplus energy generated by other subsidiaries.

recover from retail customers approximately $4.2 million in costs Entergy incurred to purchase additional power from its own River Bend Nuclear Generating Station (River Bend) and from purchased power contracts. Entergy argues that the purchase of energy generated by the 30% interest in the River Bend power plant implicates the interstate wholesale energy market and that the Commission's actions are preempted by federal law. Entergy also asserts that the Commission erred when it disallowed purchased power capacity charges. For the reasons stated below, we affirm the judgment of the trial court upholding the Commission's order.

## Background

During the summer of 1999, Entergy experienced an unanticipated power shortage that caused it to impose rolling blackouts on its retail customers. In response to regulatory criticism and fines, Entergy arranged to acquire more power from River Bend, and from unaffiliated wholesale energy providers (purchased power) to adequately meet the anticipated energy needs of its customers.

Initially, Entergy owned a 70% interest in River Bend (River Bend 70%). The energy generated from the River Bend 70% is earmarked for regulated service. The rate Entergy charges its customers for the River Bend 70% energy is set by the Commission and is designed to permit Entergy to realize a reasonable profit in excess of the utility's reasonable and necessary operating expenses associated with generating the River Bend 70% energy. *See* Tex. Util. Code Ann. § 36.051 (West 1998).

Entergy subsequently acquired the remaining 30% of the River Bend power plant (River Bend 30%) as part of a bankruptcy settlement. It set aside the energy generated from the

2

River Bend 30% for sale in the unregulated wholesale energy market.[2]  Thus, Entergy recovers its costs plus a regulated profit from the River Bend 70% energy but obtains wholesale market prices for its unregulated River Bend 30% energy.

During the 1999 blackout, Entergy sold its River Bend 30% energy on the wholesale market instead of making it available to satisfy its native load,[3] even though Entergy realized it had made insufficient resources available for its retail customers.  Entergy was criticized and fined by the Commission for the blackout and decided to make the River Bend 30% energy available to retail customers for summer 2000 as part of a comprehensive plan to avoid another blackout.  To this end, Entergy Services, Inc.[4] filed a contract for the sale of the River Bend 30% energy with the Federal Energy Regulatory Commission (FERC) on May 8, 2000 (May 2000 Tariff).  The filing contemplates the sale of the River Bend 30% energy between two Entergy affiliates, Entergy as the proposed seller and Entergy Services, Inc. as the proposed buyer.[5]  The FERC approved the River Bend 30% transaction and set a rate for the sale of the wholesale energy.  The May 2000 Tariff became effective June 1 of that same year.

---

[2]  Entergy characterizes the River Bend 30% asset as "unregulated."  Although the term "unregulated asset" is not defined, for our purposes we assume that the term means an asset whose generated energy is sold in the wholesale market and whose costs are not recovered in the base rate charged to retail ratepayers.

[3]  "Native load" refers to the collective energy needs of Entergy's retail customers.

[4]  Entergy Services, Inc. is a subsidiary of Entergy Corporation and is a service company affiliate of the Entergy utility subsidiaries.  It acts as their agent in the execution and administration of certain contracts.

[5]  The proposed sale would be executed according to the System Agreement.

Entergy used the River Bend 30% energy and purchased power to supplement its native load, ensuring that its customers would not experience another energy shortage. Entergy sought reimbursement for nearly $583 million in additional energy expenses by instituting a fuel reconciliation proceeding. *See* Tex. Util. Code Ann. § 36.203 (West 1998).

The Commission permitted Entergy to recover its eligible fuel reconciliation costs, including the cost of the nuclear fuel associated with generating the River Bend 30% energy. The Commission disallowed nearly $4.2 million of *non*-fuel costs associated with the River Bend 30% energy and associated with capacity costs that were embedded in the purchased power contracts. It is these two categories of disallowed costs to which Entergy objects.

Entergy disagreed with the Commission's decision and the Commission referred the matter to the State Office of Administrative Hearings (SOAH) for a hearing. Several parties, including the cities that Entergy serves (Cities) and the Office of Public Utility Counsel (OPC) intervened.

At the SOAH hearing, Entergy discussed the July 1999 blackout and its decision to use the unregulated River Bend 30% energy to prevent future energy shortfalls. Entergy claimed that the Commission erred when it disallowed the recovery of the River Bend 30% energy costs because the River Bend 30% energy transaction was an interstate wholesale energy transaction and subject to the rate set forth in FERC's May 2000 Tariff. Thus, according to Entergy, federal preemption precludes the Commission's discretion in determining the rate Entergy should recover in the fuel reconciliation; the Commission was required to honor the May 2000 Tariff rate and permit Entergy to recover all of its River Bend 30% costs.

The Cities and OPC disagreed with Entergy and claimed that the River Bend 30% energy sale was the product of an affiliate transaction and, thus, the Commission acted properly when it disallowed nonfuel-related costs, including the affiliate profit Entergy realized on the sale of its River Bend 30% energy to itself. The Cities and OPC also offered evidence that suggested Entergy impermissibly included capacity charges in the other purchased power costs for which it sought reimbursement. Based on these two assertions, the Cities and OPC recommended that the ALJ disallow the non-fuel costs associated with the River Bend 30% energy transaction and disallow the capacity charge component embedded in the price of the purchased power contracts.

The ALJ found that the River Bend 30% energy acquisition was an affiliate transaction that violated the Commission's cost-of-service rules, which prohibit recovery of additional profit for an affiliate sale. The ALJ indicated that there might have been some impermissibly embedded capacity costs in the purchased power contracts but declined to calculate and impute the precise amount of ineligible costs.

The Commission rejected the ALJ's recommendations regarding the affiliate sale and embedded capacity cost issues and remanded the case to SOAH to determine the portion of Entergy's claimed reimbursable expenses that was a profit Entergy realized on the sale of Entergy's River Bend 30% energy to itself, and to determine the capacity costs reflected in the claimed eligible fuel costs. On remand, the ALJ determined that the transaction was not an affiliate transaction and that all of the costs should be reimbursed.

The Commission disagreed with the ALJ's subsequent conclusions, stating that the River Bend 30% energy was not part of a purchased power transaction, but, if anything, was an

5

affiliate transaction. Moreover, the Commission found that there was no purchase or sale in connection with the River Bend 30% energy transaction because there was no transfer of title from Entergy to Entergy Services, Inc., and because Entergy did not "buy back" the power from Entergy Services Inc. The Commission's Final Order stated, "An internal corporate transfer between Entergy's unregulated and regulated business activities does not amount to a sale." The Commission explained that it was unreasonable for Entergy to recover a profit and ineligible costs associated with the "purchase" of its own wholesale electricity and to record the transaction as a "sale" in its accounting system, when Entergy merely used its own, albeit unregulated, generation. Pursuant to the administrative code, the Commission reimbursed Entergy for the River Bend 30% energy fuel costs in the fuel reconciliation and disallowed the non-fuel costs and profit Entergy realized on the affiliate sale of the River Bend 30%. *See* 16 Tex. Admin. Code § 25.236(a)(1) (2004).

The Commission also found that the purchased power included capacity charges embedded in the contract price, even though the contracts did not separately state capacity charges. Because capacity charges are ineligible for reimbursement in a fuel reconciliation proceeding, the Commission disallowed 24% of the contract price, which was the percentage Entergy admitted was a reasonable estimate of the proper capacity charge. *See id*. § 25.236(a)(4). Accordingly, the Commission allowed Entergy to recover its purchased power costs, less the disallowed capacity charges. The Commission noted that the proper forum for Entergy to recover the disallowed capacity and demand costs is through a formal rate case proceeding, not an interim fuel reconciliation proceeding. *See* Tex. Util. Code Ann. § 36.051 (West 1998).

6

Entergy appealed the decision to the district court seeking a reversal of the Commission's final order and seeking a declaratory judgment to address similar subsequent purchase power agreements. The district court denied all relief requested by Entergy. This appeal followed.

## DISCUSSION

Entergy challenges the trial court's decision in three issues: (1) whether the Commission's discretion to disallow the costs associated with the River Bend 30% energy purchase is preempted by federal law, and whether the order violates PURA and the Commission's own previous orders, and constitutes an abuse of discretion; (2) whether the Commission's order disallowing imputed capacity costs associated with other purchased power is preempted by federal law, violates the fuel rule, constitutes an arbitrary ad hoc amendment to the fuel rule, and was disallowed in the absence of substantial evidence; and (3) whether the district court erred in refusing to grant a declaratory judgment that Entergy's similarly situated power purchases are subject to the requirements of the filed rate doctrine.

### *State and Federal Regulatory Overview*

A brief review of the relevant state and federal law and regulations will be helpful to our discussion. Under PURA, a regulated electric utility such as Entergy may not automatically pass its actual fuel costs through to its customers. Tex. Util. Code Ann. § 36.201 (West Supp. 2004-05); *Nucor Steel v. Public Util. Comm'n*, 26 S.W.3d 742, 744 (Tex. App.—Austin 2000, pet. denied). Instead, the Commission conducts a full rate hearing to determine the base rate a utility may charge its customers for its energy. *See Entergy Gulf States, Inc. v. Public Util. Comm'n*, 112 S.W.3d 208,

7

215 (Tex. App.—Austin 2003, pet. denied). The base rate is prospective, and is set at a level that will permit the utility to realize a reasonable profit and reimburse the utility's projected reasonable and necessary operating costs. Tex. Util. Code Ann. § 36.051 (West 1998). A fuel factor component is incorporated in the base rate, and takes into account projected fuel costs. *Id*. § 36.203. A fuel reconciliation, as distinguished from a full rate case, is an interim "true-up" proceeding, where the Commission periodically adjusts the base rate's fuel factor to correct for the variance between the base rate's anticipated fuel costs and fuel costs actually incurred. *Id.*; *Nucor Steel*, 26 S.W.3d at 744.

A fuel reconciliation is a narrow inquiry that aims only to adjust the fuel factor for the anomalies that result from actual, fluctuating fuel prices that occur in between rate hearings. *See G.T.E. S.W., Inc. v. Public Util. Comm'n*, 978 S.W.2d 161, 168 (Tex. App.—Austin 1998, pet. denied) (Powers, J., dissenting). "The obvious intention of the legislature was to avoid the time and expense of a full-scale rate case, both to the public and to the utility, when the issue involves only a single item of what are indisputably operating expenses–fuel costs. . . ." *Id*. at 168-69. If the Commission determines that an adjustment to the fuel factor is in order, a refund or a surcharge to customers will result. 16 Tex. Admin. Code § 25.236(e) (2004). In a fuel reconciliation hearing, the utility bears the burden of demonstrating that its actual fuel-related expenses were "reasonable and necessary" and eligible for recovery. *Id.* § 25.236(d).

Eligible fuel reconciliation expenses are those expenses properly recorded in the utility's general ledger accounts 501, 503, 518, 536, 547, 555 and 565, under the FERC Uniform System of Accounts. *Id*. § 25.236(a). The FERC rules provide that account 555 shall include purchased power expenses that are incurred when a utility purchases wholesale electricity for resale.

8

*See* 18 C.F.R. § 101 (2004). The fuel rule prohibits a utility from recovering purchased power capacity costs in a fuel reconciliation. 16 Tex. Admin. Code § 25.236(a)(4) (2004). Capacity charges and other operating expenses may be recovered in a full rate case hearing. *See* Tex. Util. Code Ann. § 36.051 (West 1998).

Utilities are also prohibited from charging customers for an additional profit realized from the sale of energy from an affiliate of the utility to itself. 16 Tex. Admin. Code § 25.236(a)(1) (2004). "The electric utility may not recover [a] . . . profit for an affiliate of the electric utility, regardless of whether the affiliate incurs or charges the . . . profit before or after the fuel is delivered to the generating plant site." *Id*.

The FERC regulates the sale of electricity at wholesale in interstate commerce. 16 U.S.C. § 824(b); *Entergy La., Inc. v. Louisiana Pub. Serv. Comm'n*, 539 U.S. 39, 41 (2003). Under the filed rate doctrine, interstate power rates filed with the FERC or fixed by the FERC must be given binding effect by state utility commissions determining intrastate rates. *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 963 (1986). When the FERC sets a rate between a purchaser and seller of wholesale power, a state may not exercise its jurisdiction over retail sales to prevent the seller from recovering the FERC-approved rate, impermissibly "trapping" costs. *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 372 (1988).[6] A state agency's failure to give

---

[6] The Supreme Court recognized a limited "prudence review" exception to the scope of the FERC's jurisdiction and filed rate doctrine. *Gulf States Utils. Co. v. Public Util. Comm'n*, 841 S.W.2d 459, 469 (Tex. App.—Austin 1992, writ denied). Federal preemption does not preclude a state utility commission's review of a utility's prudence in contracting to purchase a quantity of energy capacity in light of its projected needs and considering its alternative power sources. *Id*. The prudence review exception is not at issue in this case.

binding effect to a FERC-approved wholesale power rate is a violation of the FERC's exclusive jurisdiction and therefore is preempted by federal law. *Id.* at 371. A fuel reconciliation is a ratemaking proceeding. *Southwestern Pub. Serv. Co. v. Public Util. Comm'n*, 962 S.W.2d 207, 219 (Tex. App.—Austin 1998, pet. denied); *G.T.E. S.W., Inc.*, 978 S.W.2d at 166.

### *The River Bend 30% Transaction*

In its first issue, Entergy asserts that it was error for the Commission to disallow the River Bend 30% energy non-fuel costs. Entergy argues that because the transaction was an interstate sale of wholesale electricity, the filed rate doctrine requires the Commission to permit Entergy to recover *all* of its River Bend 30% energy costs, as provided for in the May 2000 Tariff rate. Thus, according to Entergy, the Commission's regulation of the River Bend 30% energy costs, *i.e.*, disallowing its non-fuel expenses, is preempted by federal law. Entergy also complains that the Commission's disallowance of the River Bend 30% energy non-fuel costs contradicted the Commission's previous orders and constitutes an abuse of discretion.

We begin our discussion by setting forth our analytical framework. We confine our inquiry to whether the Commission properly disallowed ineligible costs in evaluating the Commission's actions in the fuel reconciliation. *See* Tex. Util. Code Ann. § 36.203 (West 1998). Pursuant to the fuel reconciliation hearing, the Commission permitted Entergy to recover its River Bend 30% energy nuclear fuel costs but disallowed certain non-fuel expenses Entergy wanted to charge through to its retail customers, including the profit Entergy realized on the sale of its wholesale energy to itself, and other ineligible operating expenses. Entergy asserts that the filed rate doctrine applies and thus the Commission must permit Entergy to recover all of its River Bend 30%

10

energy costs as allowed by the May 2000 Tariff.  *See Nantahala Power and Light Co.*, 476 U.S. at 963.  We disagree.

Texas law prohibits a utility from charging customers for an additional profit realized from the sale of energy from an affiliate of the utility to itself.  16 Tex. Admin. Code § 25.236(a)(1) (2004).  The May 2000 Tariff contemplated the sale of the River Bend 30% energy from Entergy to Entergy Services, Inc., then a sale from Entergy Services, Inc. back to Entergy to supplement its native load.

In its effort to avoid affiliate sale fuel reconciliation deductions, Entergy proved that in fact *no sale occurred*.  The evidence in the record shows that the proposed sales transaction was never executed as structured in the May 2000 Tariff.  James Kenney, Vice President of Energy Management for Entergy Services, Inc., testified at the SOAH hearing that *Entergy*, not Entergy Services, Inc., acquired the River Bend 30% energy.  He asserted that "regardless of the contract and the filing at the FERC, this is strictly a transaction from Entergy to itself."  Kenney averred that the unregulated River Bend 30% energy was dedicated to regulated retail service for a limited period of time, and that the energy never left Entergy.

Furthermore, under the terms of the System Agreement, it would have been impossible for Entergy to sell the River Bend 30% energy to the Entergy System.  During the summer of 1999, while Entergy was experiencing the energy shortfall that led to the blackout and its regulatory discipline, Entergy sold its River Bend 30% to a third party instead of using the River Bend 30% energy to address Entergy's native load demands.  Entergy was informed by both the Texas and Louisiana energy regulatory commissioners that it should use the River Bend 30% energy

11

to supplement its anticipated energy needs for the summer of 2000. Under the System Agreement, an operating company, like Entergy, may only sell energy it produces in excess of its needs. Because Entergy needed the River Bend 30% energy to satisfy its native load, Entergy, by the terms of the System Agreement, was never in the position to sell the River Bend 30% to the Entergy System and to repurchase the energy, as structured under the May 2000 Tariff.

The Commission also found that no purchase or sale occurred because there was no transfer of title from Entergy to Entergy Services, Inc., nor did Entergy "buy back" the power from Entergy Services, Inc. Obtaining approval from the FERC for a transaction is not tantamount to consummating the transaction. Thus the sale to Entergy Services, Inc. contemplated in the FERC filing never took place.

Entergy argues that an intra-corporate transfer under *Public Serv. Comm'n v. Mid-Louisiana Gas Co.*, 463 U.S. 319 (1983) is considered a "sale." In *Mid-Louisiana Gas Co.*, the U.S. Supreme Court found that under federal statutes regulating the sales of natural gas, an intra-corporate transfer could be considered a "first sale." *Id*. at 326. The Supreme Court examined the legislative history of the Natural Gas Policy Act and determined that Congress intended for pipeline production to receive first sale pricing. *Id*. at 338. The Supreme Court's *Mid-Louisiana Gas Co.* decision was narrowly tailored to address the question of "first sales" under the Natural Gas Policy Act; it did not hold that *all* utility intra-corporate transfers are "sales." *See Southern Ca. Edison Co. v. Southern Ca. Gas Co.*, 80 F.E.R.C. ¶ 61,390 (1997).

Because the May 2000 Tariff sale never took place and because under these circumstances the intra-corporate transfer is not considered a "sale," the filed rate doctrine does not

12

apply and the Commission's discretion to disallow non-fuel costs in the fuel reconciliation is not preempted by federal law. A fuel reconciliation is a narrow inquiry about the fluctuation of actual fuel costs. Tex. Util. Code Ann. § 36.203 (West 1998); *see G.T.E. S.W., Inc.*, 978 S.W.2d at 168. We hold that the Commission's treatment of the River Bend 30% transaction is not preempted by federal law and does not violate the filed rate doctrine. The Commission properly disallowed the non-fuel components of the River Bend 30% energy costs. *See* Tex. Util. Code Ann. § 36.051 (West 1998).

Entergy also complains that if the filed rate doctrine does not apply, Entergy's non-fuel costs will be unfairly and impermissibly trapped because these costs are not already included in Entergy's base rate and Entergy claims that it cannot otherwise recover these costs. *See Mississippi Power and Light Co.*, 487 U.S. at 372. We disagree.

First, Entergy has not shown that it failed to recover its non-fuel rates through its base rate due to the additional electricity it sold during the summer of 2000. Entergy's base rates were set based on the expectation that it would sell a certain amount of electricity at retail, and the base rates were frozen after the rate case proceeding. During the Summer of 2000, Entergy sold more electricity at retail than had been expected when the base rates were set. Thus with each incremental unit sold at retail, *Entergy recovered more in its base rates* than it and the Commission had expected Entergy to recover. To show that non-fuel costs were "trapped," Entergy would have to show that the non-fuel related costs were not recovered in the additional revenue Entergy realized through base rates. Entergy made no such showing.

13

Second, even if Entergy could show it did not recover all its non-fuel costs, Entergy is not precluded from reimbursement; it may apply to recover these costs in its next rate case proceeding. *See* Tex. Util. Code Ann. § 36.051 (West 1998).

Entergy also complains that the Commission's disallowance of the River Bend 30% energy non-fuel costs was an abuse of discretion because it contradicted the Commission's previous orders by treating the River Bend 30% energy as a regulated asset for the purpose of the fuel reconciliation.

A state agency decision may be found to be arbitrary and capricious when it fails to reflect consideration of statutory factors and when it reflects an unreasonable result, even if the agency purports to review pertinent factors. *E.g.*, *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 184 (Tex. 1994).

The Commission had previously treated the River Bend 30% energy as a wholesale generation asset. It did not include any of the River Bend 30% energy non-fuel related costs in the base rates Entergy charges its customers because *Entergy* insisted on selling the River Bend 30% energy on the wholesale energy market. Entergy elected to use its own River Bend 30% wholesale energy to comply with the Commission's mandate to secure additional power to satisfy the needs of its retail customers. Because a portion of the costs for which Entergy seeks reimbursement are ineligible non-fuel expenses, the Commission disallowed the ineligible costs, consistent with the guidelines set forth in the Texas Administrative Code. *See* 16 Tex. Admin. Code § 25.236(a) (2004). Thus the Commission's decision was not arbitrary or capricious. We overrule Entergy's first issue.

14

***Imputed Capacity Charges***

In its second issue, Entergy asserts that the Commission improperly imputed capacity charges from the additional power Entergy purchased from external wholesalers.[7] Entergy argues that the filed rate doctrine preempts the Commission's actions and that the Commission violated the federal interpretation of the System Agreement. Entergy also challenges the Commission's disallowance of imputed capacity costs because this treatment violates the fuel rule, is not supported by substantial evidence, and constitutes an arbitrary ad hoc amendment to the fuel rule.

The Commission asserts that Entergy waived its federal preemption argument by failing to raise it in its motion for rehearing. Entergy argues that case law permits Entergy to raise an issue of federal preemption at any time. *See Gorman v. Life Ins. Co. of North Am.*, 811 S.W.2d 542, 545 (Tex. 1991).

In administrative proceedings, a party must timely file a motion for rehearing as a prerequisite to appeal. Tex. Gov't Code Ann. § 2001.145 (West 2000). The motion for rehearing must be sufficiently definite to allow the agency to cure the error or defend the order. *Ray v. State Bd. of Pub. Accountancy,* 4 S.W.3d 429, 433 (Tex. App.—Austin 1999, no pet.); *Four Stars Food Mart, Inc. v. Texas Alcoholic Beverage Comm'n*, 923 S.W.2d 266, 270 (Tex. App.—Fort Worth 1996, no writ). To preserve the issue for review, the party must state in the motion for rehearing the particular issue the party asserts was error and the legal basis upon which the claim rests. *Id*.

---

[7] This issue only concerns power purchased from outside energy wholesalers and not the River Bend 30% transaction.

In *Gorman*, a widow sued her husband's employer and its insurer to recover work-related death benefits she claimed the insurance company improperly denied. *See Gorman*, 811 S.W.2d at 544. The defendants contended that the widow's causes of actions were preempted by ERISA because they "related to" an employee benefit welfare plan organized pursuant to the authority and requirements of ERISA. *Id*. The supreme court recognized that it had to clarify the extent of the ERISA preemption. *Id*. "At the heart of the present dispute is whether, given the facts of this case, ERISA preemption implicates the subject matter jurisdiction of the court or merely affects which law is to be used in the case." *Id*. A preemption argument that affects forum rather than choice of law *cannot* be waived and may be raised on appeal. *Id*. However, an argument that affects choice of law *can* be waived. *See id*.

Entergy claims that federal law preempts the Commission's actions because the filed rate doctrine mandates that the Commission apply wholesale power rates fixed by the FERC. Thus, Entergy asserts a choice of law argument as to which rules, federal or state, the Commission should have applied in this case. Entergy does not assert a preemption argument attacking the competency of the Commission or the courts to hear the case. Thus, *Gorman* does not support Entergy's argument. Because Entergy did not preserve the choice of law issue in its motion for rehearing, Entergy has waived the right to argue this issue on appeal. *Ray,* 4 S.W.3d at 433.

Entergy also asks us to decide whether the Commission's treatment of capacity costs violates the fuel rule, whether the Commission's decision is supported by substantial evidence, and whether the Commission's actions constitute an arbitrary ad hoc amendment to the fuel rule.

16

The fuel rule prevents a utility from recovering capacity costs through the fuel factor as part of purchased power. 16 Tex. Admin. Code § 25.236(a)(4) (2004).[8] In determining whether substantial evidence exists to support an agency's decision, the reviewing court may decide only whether the record demonstrates some reasonable basis for the agency's action. *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128 (Tex. 1999). The court may not substitute its judgment for that of the agency, and the court does not determine whether the agency's decision was correct. *Id*. Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them. *Id*. An administrative decision may be sustained even if the evidence preponderates against it. *Id*.

A state agency must promulgate new rules through formal rulemaking procedures, which include giving notice of a proposed new rule, soliciting public comment, submitting to legislative review, and entering an order to adopt the new rule. *See* Tex. Gov't Code Ann. §§ 2001.023; 2001.029; 2001.032-.033 (West 2000).

Entergy claims that the Commission violated the fuel rule because it disallowed capacity charges that were not explicitly stated separately as line items. In essence, Entergy argues that the fuel rule requires the Commission to pass through to retail customers the entire cost of purchased power unless the contract explicitly states capacity charges. In other words, Entergy argues the Commission cannot look beyond the stated "energy only" purchased power contract terms to determine whether the contract in fact includes embedded capacity charges.

---

[8] Capacity charges may be recovered in a full rate case hearing. *See* Tex. Util. Code Ann. § 36.051 (West 1998).

17

The plain language of the fuel rule prohibits a utility from recovering capacity charges associated with purchased power. *See* 16 Tex. Admin. Code § 25.236(a)(4) (2004). The rule is not stated in terms of segregated electricity and capacity charges, but in terms of total capacity charges. The expert testimony in the record shows that the contracts provided capacity benefits by offering system-wide reliability and firmness of supply, even though the contracts did not separately state a capacity charge. Entergy did not advance its own estimate of the imputed capacity charge, but conceded that the expert's estimate of 24% of the contract price was reasonable. Furthermore, Entergy testimony corroborated Entergy's desire to acquire through purchased power the power and *capacity* it required to avoid another energy shortfall in 2000. We hold that the Commission properly excluded imputed capacity charges that Entergy's application for a fuel reconciliation wrongfully included capacity costs and that there is substantial evidence to support the Commission's decision to exclude the imputed capacity charges.

Last, Entergy asserts that the Commission illegally modified the fuel rule when it disallowed the embedded capacity charges associated with the purchased power. Entergy claims that this practice departed from previous applications of the fuel rule and that the ad hoc modification is unlawful because the Commission did not engage the formal rulemaking process to modify the fuel rule. *See* Tex. Gov't Code Ann. §§ 2001.023; 2001.029; 2001.032-.033 (West 2000). In January 2005, the Commission solicited comments on proposed amendments to the fuel rule regarding eligible purchased power expenses. *See* 30 Tex. Reg. 335-36 (2005) (proposed January 10, 2005).

18

Entergy asserts that the Commission's decision departed from its fuel reconciliation policy and rules and suggests that this request for public comment is tantamount to the Commission admitting that it must engage the formal rulemaking process to modify the fuel rule to permit the Commission to impute capacity charges. We disagree.

The proposed modification for which the Commission seeks public comment will facilitate the identification and calculation of imputed energy charges in purchased power contracts when no capacity charge is separately stated. *See id*. The modification does not seek to establish whether the Commission may impute charges.

Furthermore, the Commission may consider a matter in a contested case before adopting a rule later. *See City of El Paso*, 883 S.W.2d at 189 ("ad hoc adjudication may be preferable to formal rulemaking proceeding where 'the agency may not have had sufficient experience with a particular problem to warrant rigidifying its tentative judgment into a hard and fast rule.'")

We hold that the Commission's treatment of the imputed capacity costs was proper under the fuel rule and was supported by substantial evidence, and that the Commission's decision to disallow imputed capacity charges did not constitute an ad hoc amendment to the fuel rule. We overrule Entergy's second issue.

### *Declaratory Judgment*

In its last issue, Entergy asserts that the district court erred in refusing to grant a declaratory judgment that Entergy's similarly situated future power purchases are subject to federal

preemption and the filed rate doctrine. Because we hold that the transactions at issue in this case are not subject to the filed rate doctrine, we need not reach the declaratory judgment issue.

**CONCLUSION**

We hold that the Commission properly disallowed the non-fuel costs associated with the River Bend 30% energy transaction and properly disallowed the purchased power contracts' imputed capacity costs in the fuel reconciliation. We affirm the judgment of the district court, affirming the Commission's actions.

———————————————————

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: May 19, 2005